El Juez Asociado Señor Martínez Torres
emitió la opinión del Tribunal.
El presente recurso nos permite resolver, por primera vez, si un área limitada al uso exclusivo de un aparta-mento es un elemento común limitado. Para el análisis, estudiaremos con detenimiento el Art. 12 de la Ley de Con-dominios, Ley Núm. 103-2003 (31 L.P.R.A. sec. 1291j). De igual forma, analizaremos si unos titulares podían variar la fachada de su apartamento sin el consentimiento uná-nime de los demás titulares del condominio.
Evaluadas las controversias, resolvemos, en primer lu-gar, que erró el foro apelativo intermedio al revocar la or-den de revertir el color de los plafones del techo y las ba-randas del balcón del piso de los recurridos al color que seleccionó el Consejo de Titulares. En segundo lugar, deter-minamos que cuando un área es para el disfrute exclusivo de un apartamento, no es un área común, sino privativa.
I
El condominio Condado Terrace está sometido al régi-men de propiedad horizontal desde 1970. Es un condomi-nio exclusivamente residencial que consta de seis pisos de apartamentos. Algunos de esos pisos cuentan con uno o dos apartamentos por piso, para un total de nueve apartamen-tos en todo el inmueble. Específicamente, el primero, se-gundo y sexto piso cuentan con dos apartamentos por piso. En cambio, en el piso tercero, cuarto y quinto hay solo un apartamento por piso. Apéndice del certiorari, pág. 305.
*211 El origen de la controversia que tenemos ante nos sur-gió luego de que los esposos Richard K. y Cristina Batista de Nobbe, dueños del único apartamento que ubica en el quinto piso, presentaron el 10 de octubre de 2003 una pri-mera querella ante el D.A.Co. (Núm. 100022346). En ella, los esposos impugnaron varias acciones y omisiones de la Junta de Directores del condominio Condado Terrace, en-tre las que figuraban alteraciones múltiples a la fachada. En particular, el matrimonio imputó a la Junta de Direc-tores permitir alteraciones de las ventanas, de los rótulos, de las cortinas de lona; la instalación de extractores que afectaban el disfrute de su apartamento; no reparar des-perfectos en los conductos de electricidad que ocasionaban que la caja de fusibles de su apartamento se inundara. Asimismo, le atribuyó a la Junta de Directores del condo-minio Condado Terrace negarse a pagar el dinero producto de las reclamaciones presentadas y aprobadas por el se-guro por los daños que ocasionó el huracán Georges.
El D.A.Co. realizó una vista ocular y varias vistas administrativas. De la vista ocular, y pertinente al caso que nos ocupa, el D.A.Co. se percató de que el matrimonio Nobbe-Batista, al igual que otros titulares, alteraron la fa-chada del condominio. En particular, el matrimonio Nobbe-Batista cambió el color del plafón del techo y de las baran-das del balcón de su piso, sin la autorización del Consejo de Titulares. En los otros pisos del Condominio, esos elemen-tos estaban pintados de un color distinto, que selecciona-ron todos los titulares. Además, el matrimonio Nobbe-Batista removió la puerta divisoria de dos hojas que abría al recibidor del quinto piso, para que el elevador abriera directamente a su apartamento.
El 12 de agosto de 2004, el D.A.Co. emitió una resolución. En ella, ordenó a la Junta de Directores del condominio Condado Terrace convocar al Consejo de Titu-lares a una asamblea para que los titulares determinaran lo que entendieran pertinente con relación a las alteracio- *212 nes de la fachada del condominio. En reconsideración, el D.A.Co. señaló que no dirimió nada en particular con rela-ción a los cambios realizados al vestíbulo del quinto piso, por lo que correspondía al Consejo de Titulares expresarse al respecto en la asamblea. Aún inconformes, el matrimo-nio Nobbe-Batista, junto a otra titular, acudieron al Tribunal de Apelaciones. Ese foro, tras revisarla, confirmó la resolución del D.A.Co.
En cumplimiento de lo ordenado por el D.A.Co., el Con-sejo de Titulares celebró la asamblea extraordinaria. De la minuta surge que el Consejo de Titulares acordó que los esposos Nobbe-Batista revirtieran a su estado original el vestíbulo del quinto piso y sus componentes eléctricos. Ade-más, debían cambiar el color de los techos y de las baran-das del balcón de su apartamento.
Nuevamente inconformes, los esposos Nobbe-Batista presentaron una segunda querella ante el D.A.Co. (Núm. 100031240). En síntesis, impugnaron los acuerdos que al-canzó el Consejo de Titulares en la asamblea de 6 de fe-brero de 2006.
Entretanto, los esposos Nobbe-Batista informaron al D.A.Co. que pintaron el borde de los pasamanos de los bal-cones del quinto piso del mismo color del resto de los pasa-manos y las barandas del condominio. Argumentaron que el cambio de color aprobado en 2002 no contó con el voto unánime de todos los titulares y que, por lo tanto, no era válido.
Tras varios incidentes procesales, el D.A.Co. emitió una resolución el 29 de diciembre de 2009. Respecto al aparta-mento del matrimonio Nobbe-Batista, el D.A.Co. concluyó en sus determinaciones de hechos que el “Consejo de Titu-lares determinó requerir que los colores del plafón del te-cho y barandas sea igual al del conjunto general del edificio y la restitución del piso 5 del condominio a su estado original, según consta de la escritura matriz y planos del edificio”. Apéndice del Certiorari, pág. 308.
*213 Añadió que
[e]n el piso 5 ubica únicamente el apartamento de la parte querellante. Existe un pequeño vestíbulo que parece ser un área común limitada. Al abrir la puerta del ascensor existe un portón de rejas con llave en el marco del ascensor, la cual [sic] solo puede ser abierta por la querellante. La querellante re-movió la puerta doble en madera que existía para dar acceso a su apartamento, e hizo formar parte de su apartamento el vestíbulo, alegando que es un área privada. El piso y las pa-redes son en mármol, parecido al que existe en el vestíbulo principal del condominio. Apéndice del Certiorari, pág. 309.
Además, en el vestíbulo del quinto piso ubica también un armario de mantenimiento que se denominó en la escri-tura matriz como un elemento común limitado.
En cuanto a lo relacionado a devolver el vestíbulo y los componentes eléctricos del quinto piso a su estado original, así como lo referente a la aprobación de los colores de los plafones del techo y las barandas del mismo piso, el D.A.Co. razonó que esos
... asuntos fueron previamente discutidos y adjudicados por este departamento en una querella anterior como que consti-tuían una alteración de fachada. Como cuestión de hecho, du-rante la inspección ocular realizada en el mes de noviembre de 2008, el juez administrativo pudo comprobar la existencia actual de estas condiciones tanto en cuanto al hecho de que la parte querellante se ha apropiado del pasillo que claramente constituye un área común limitada conforme la escritura ma-triz, así como de la diferencia del color tanto del techo como de la baranda del balcón del apartamento de la parte querellante. Esto es una clara violación al artículo 15 de la Ley de condo-minios [sic], la cual trató de subsanarse convocando al Consejo de Titulares a decidir sobre un asunto el cual requería unanimidad. No obstante, no se alcanzó la unanimidad nece-saria votando 7 titulares en contra de que permaneciera la violación existente.
Conforme lo anterior, la impugnación de estos dos asuntos por la parte querellante debe ser desestimada, por no haber conseguido la unanimidad requerida. Apéndice del Certiorari, págs. 315-316.
Por último, el D.A.Co. no tomó en consideración la mo- *214 ción informativa que presentó el matrimonio referente al cambio de color que hicieron en el borde de los pasamanos de los balcones del quinto piso para conformarlos con el del resto del condominio.
Inconformes otra vez, el matrimonio Nobbe-Batista acu-dió al Tribunal de Apelaciones. Ese foro revocó la resolu-ción del D.A.Co. En esencia, el foro apelativo intermedio entendió incorrectamente que
... la controversia adjudicada en la querella núm. 100022346 es una distinta a la que encierra esta querella. Ahora está en controversia el uso y cambio de colores del ves-tíbulo del piso 5 que está directamente al frente del ascensor, el color del plafón del techo de dicho vestíbulo y las barandas de las escaleras de ese mismo piso. Apéndice del Certiorari, pág. 470.
Así pues, luego de evaluar el derecho aplicable y el plano del condominio, el Tribunal de Apelaciones concluyó que “según se desprende del plano que obra en el expe-diente, el área del vestíbulo es interior[;] no es área exterior del edificio, por lo que no puede catalogarse como fa-chada lo que no es”. Apéndice del Certiorari, pág. 475. Por su parte, concluyó que el uso del vestíbulo no varió, ya que es un área común limitada al apartamento Núm. 5. Razonó que lo que cambió fue la intensidad con la que se usaba el área, que ahora “está controlada por una llave que sólo posee el apartamento 5”. Id.
Insatisfechos con esa determinación, la Junta de Direc-tores presentó ante este Tribunal un recurso de certiorari. En su recurso, señala que el Tribunal de Apelaciones erró al determinar que la controversia presentada en este re-curso no ha sido adjudicada ya que, contrario a la querella anterior, esta no se trata de un asunto de fachada. Señalan que se relaciona con el color del plafón del techo del vestí-bulo del quinto piso y las barandas de ese mismo piso, que son elementos internos del inmueble. Además, se le imputa *215 a ese foro ignorar que la escritura matriz define y establece un área de vestíbulo común limitada en el quinto piso, que el matrimonio Nobbe-Batista privatizó al colocar en el marco del elevador un portón de reja que limita su acceso. De igual forma, se responsabiliza al Tribunal de Apelacio-nes de ignorar que con la privatización de esa área, el ma-trimonio Nobbe-Batista utiliza para su beneficio los com-ponentes eléctricos de un área común limitada.
El 15 de abril de 2011 expedimos el auto. Con el benefi-cio de la comparecencia de ambas partes, pasemos a ana-lizar la controversia ante nos.
I — I hH
De entrada, conviene recordar que es norma reiterada por este Tribunal que “las decisiones de los organismos administrativos deben ser consideradas con gran deferencia por los tribunales apelativos, por razón de la experiencia y pericia de las agencias respecto a las facultades que se les han delegado”. Unlimited v. Mun. de Guaynabo, 183 D.P.R. 947, 991 esc. 110 (2011), citando a Mun. de San Juan v. CRIM, 178 D.P.R. 163, 175 (2010); Borschow Hosp. v. Jta. de Planificación, 177 D.P.R. 545, 566 (2009); Hatillo Cash & Carry v. A.R.Pe., 173 D.P.R. 934, 954 (2008); Otero v. Toyota, 163 D.P.R. 716, 727 (2005); Rivera Concepción v. A.R.Pe., 152 D.P.R. 116, 122 (2000); Misión Ind. P.R. v. J.P. y A.A.A., 142 D.P.R. 656, 672 (1998). Por consiguiente, en el ejercicio de esa deferencia hemos “establecido que las decisiones de las agencias administrativas tienen una presunción de legalidad y corrección que los tribunales deben respetar mientras que la parte que las impugna no produzca suficiente evidencia para derrotarlas”. Calderón Otero v. C.F.S.E., 181 D.P.R. 386, 395 — 396 (2011), citando a Misión Ind. P.R. v. J.P. y A.A.A., supra, págs. 672-673.
*216 Precisamente por esa deferencia hemos advertido que “el criterio bajo el cual un tribunal debe de revisar las determinaciones e interpretaciones de una agencia administrativa es el criterio de razonabilidad”. Rebollo v. Yiyi Motors, 161 D.P.R. 69, 76 (2004). Dicho de otro modo, “la revisión judicial de decisiones administrativas se debe limitar a determinar si la agencia actuó arbitraria o ilegalmente, o en forma tan irrazonable que su actuación constituye un abuso de discreción”. Id. Véanse, además: Fuertes y otros v. A.R.Pe., 134 D.P.R. 947, 953 (1993); Murphy Bernabé v. Tribunal Superior, 103 D.P.R. 692, 699 (1975).
Así las cosas, cuando se trata de las determinaciones de hecho de un organismo administrativo “ ‘[l]os tribunales no deben intervenir ... si las mismas están sostenidas por evidencia sustancial que surja del expediente administrativo considerado en su totalidad’ ”. (Enfasis suprimido). Pereira Suárez v. Jta. Dir. Cond., 182 D.P.R. 485, 511-512 (2011), citando a Domínguez v. Caguas Expressway Motors, 148 D.P.R. 387, 397 — 398 (1999). Para propósito del análisis, debemos entender como evidencia sustancial “ ‘aquella evidencia relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión’ ”. Id., pág. 512, citando a Otero v. Toyota, supra, pág. 728. No obstante, la deferencia que debemos a las determinaciones de hechos de las agencias no es absoluta. Id.
Ahora bien, las impugnaciones sobre las determinaciones de hechos de la agencia no pueden sustentarse en el vacío. Por eso, hemos reiterado “que quien quiera probar que las determinaciones de hecho de una agencia no se sostienen en el expediente debe demostrar que ‘existe otra prueba en el expediente que razonablemente reduzca o menoscabe el peso de tal evidencia, hasta el punto de que un tribunal no pueda, concienzudamente, concluir que la evi- *217 dencia sea sustancial, en vista de la prueba presentada y hasta el punto que se demuestre claramente que la decisión [del organismo administrativo] no está justificada por una evaluación justa del peso de la prueba que tuvo ante su consideración’ (Corchetes en el original). Pereira Suárez v. Jta. Dir. Cond., supra, citando a Domínguez v. Caguas Expressway Motors, supra, pág. 398. Véase, además Hilton Hotels v. Junta Salario Mínimo, 74 D.P.R. 670, 686 (1953).
Como vemos, la revisión judicial de una decisión administrativa se resume en tres asuntos: “(1) la concesión del remedio apropiado [;] (2) la revisión de las determinaciones de hecho conforme al criterio de evidencia sustancial, y (3) la revisión completa y absoluta de las conclusiones de derecho”. Asoc. Fcias. v. Caribe Specialty et al. II, 179 D.P.R. 923, 940 (2010), citando a Mun. de San Juan v. J.C.A., 149 D.P.R. 263, 279-280 (1999); See. 4.5 de la Ley de Procedimiento Administrativo Uniforme del Estado Libre Asociado de Puerto Rico, 3 L.P.R.A. see. 2175.
Finalmente, cabe señalar
... que las conclusiones de derecho de la agencia, distinto de las determinaciones de hecho, el tribunal las puede revisar en todos sus aspectos, sin sujeción a norma o criterio alguno. Esto no significa, sin embargo, que al ejercer su función revisora, el tribunal pueda descartar libremente las conclusiones e inter-pretaciones de la agencia, sustituyendo el criterio de ésta por el propio. Al contrario, hemos reiterado consistentemente —antes y después de la vigencia de la L.P.A.U.- — ■ que, de or-dinario, los tribunales deben deferencia a las interpretaciones y conclusiones de los organismos administrativos. (Citas omitidas). Rebollo v. Yiyi Motors, supra, pág. 77.
Luego de puntualizar los límites de nuestra revisión en términos de las decisiones administrativas, veamos los as-pectos de la Ley de Condominios que nos competen para resolver las controversias que nos ocupan.
*218 i — i I — I I — I
Desde sus inicios, “[l]a aprobación de la Ley de la Pro-piedad Horizontal adelantó el propósito de armonizar el disfrute de cada apartamento por su titular y las limitacio-nes a ese disfrute en interés de la colectividad”. D.A.Co. v. Junta Cond. Sandy Hills, 169 D.P.R. 586, 597 (2006). En otras palabras, subyace en estos preceptos la necesidad imperiosa de crear “unas reglas mínimas para el uso y disfrute de cada apartamento” que “facilit[en] la convivencia entre los titulares de un inmueble, sin que se intervenga indebidamente con los derechos individuales de los demás”. Junta Dir. Cond. Montebello v. Torres, 138 D.P.R. 150, 154 (1995). A esos propósitos, nuestro ordenamiento jurídico ha delimitado a lo largo de los años “las mejoras, las modificaciones, las reparaciones y la limpieza que un titular puede llevar a cabo en su apartamento”. Id.
La Ley de Condominios establece unas normas rigurosas para variar la fachada. Esta, por definición, es “el diseño del conjunto arquitectónico y estéticos exterior del edificio, según se desprende de los documentos constitutivos del condominio”. Art. 15(e), 31 L.P.R.A. sec. 1291m(e). Precisamente, las divergencias de gustos por la fachada son uno de los asuntos que con más frecuencia perturban la convivencia en el régimen de propiedad horizontal. Junta Dir. Cond. Montebello v. Torres, supra, pág. 152. Se trata de “una materia en la cual chocan con frecuencia los estilos de vida y gustos individuales de un titular, con los del resto de los propietarios y con la armonía que debe prevalecer en la vida en un condominio”. Id., pág. 155. Por eso, “[l]a prohibición de la alteración de la fachada es una de las más neurálgicas de nuestro ordenamiento”. D.A.Co. v. Junta Cond. Sandy Hills, supra, pág. 598.
El Art. 15(e) de la Ley de Condominios, supra, codifica la norma general para el cambio de la fachada ex *219 terior en el régimen de la propiedad horizontal. Al res-pecto, este señala que “[n]ingún titular u ocupante podrá, sin el consentimiento de todos los titulares, cambiar la forma externa de la fachada, ni decorar las paredes, puer-tas o ventanas exteriores con colores o tonalidades distin-tas a las del condominio”. (Énfasis suplido). Art. 15(e), supra. Esta prohibición rigurosa que impuso el legislador “parte de la premisa de que tanto la fachada como las de-más paredes perimetrales de un edificio son consideradas como bienes de uso común”. Junta Dir. Cond. Montebello v. Torres, supra, pág. 155. Por esa razón indicamos en Junta Dir. Cond. Montebello v. Torres, supra, pág. 156, que “el comprador de un apartamento no adquiere la parte de la fachada del edificio donde está su propiedad, sino una pro-porción indivisa”. Estas consideraciones apoyan que “[c]uando un titular viola esta restricción y por su cuenta introduce cambios de trascendencia a la estética o al diseño arquitectónico de un edificio, la junta de directores [haga] ‘las oportunas advertencias y apercibimientos a los titulares’y tom [e] las medidas correspondientes para hacer cumplir las restricciones del régimen de propiedad horizontal”. íd., págs. 157-158. Véase, además, 31 L.P.R.A. sec. 1293b-4(a).
Enmarcada la doctrina en cuanto a la alteración de fa-chada en el régimen de propiedad horizontal, evaluaremos, primeramente, si el matrimonio Nobbe-Batista podía alte-rar los colores designados para el plafón del techo y las barandas del balcón del quinto piso. Simultánea a esa dis-cusión, analizaremos si el foro apelativo intermedio erró al concluir que “la controversia adjudicada en la querella núm. 100022346 es una distinta a la que encierra esta querella [, ya que ahora] está en controversia el uso y cambio de colores del vestíbulo del piso 5 que está directa-mente al frente del ascensor, el color del plafón del techo de dicho vestíbulo y las barandas de las escaleras de ese mismo piso”. Apéndice del Certiorari, pág. 470.
*220 Una lectura integral de la resolución del D.A.Co. y de la totalidad del expediente denota que el Tribunal de Apela-ciones interpretó erróneamente el asunto ante su consideración. Sin lugar a dudas, la controversia sobre los cambios de fachada siempre ha sido por el color de las ba-randas y el techo del balcón del quinto piso. De hecho, del expediente no surge, ni de los planos, que el vestíbulo del piso 5 tenga barandas. Al parecer, la confusión en la inter-pretación del foro apelativo intermedio tuvo su origen en la insuficiencia lingüística de la resolución del D.A.Co. La re-solución hizo alusión al color de los techos y barandas “del piso” para referirse “al color tanto del techo como de la baranda del balcón del apartamento”. Véase Apéndice del Certiorari, pág. 315. El lenguaje que empleó el D.A.Co. pudo deberse a que el piso 5 del inmueble en controversia solo cuenta con el apartamento en el que residen los espo-sos Nobbe-Batista.
Aclarado lo anterior, veamos entonces si el matrimonio Nobbe-Batista podía mantener el color del techo y las ba-randas de los balcones de su apartamento distinto al que acordó el Consejo de Titulares. De la minuta de la asam-blea extraordinaria celebrada el 6 de febrero de 2006, surge que se discutió el asunto referente al color de los techos y de las barandas del balcón del piso 5. De igual forma, en ese documento se demuestra que la votación para auscultar si se le permitía mantener las modificacio-nes al color de los plafones del techo y las barandas de los balcones que realizaron en su apartamento el matrimonio Nobbe-Batista se derrotó siete a dos.
Desde 1995 señalamos en Junta Dir. Cond. Montebello v. Torres, supra, pág. 157, que “uno de los elementos de una fachada que no pueden ser cambiados de forma unilateral por un titular es el balcón del apartamento. Este constituye una parte importante del diseño arquitectónico y la estética de un edificio”. Por consiguiente, la decisión *221 del matrimonio Nobbe-Batista de utilizar un color distinto del que seleccionó el Consejo de Titulares para el techo y las barandas de los balcones del inmueble constituyó una alteración de fachada sin el consentimiento unánime de los titulares que exige la Ley de Condominios.
Los esposos Nobbe-Batista arguyen que el D.A.Co. no “tomó en consideración que el color blanco del plafón de los balcones del piso 5 fue el color aprobado por unanimidad del Consejo de Titulares en el año 1995”. Alegato de la parte recurrida, pág. 10. Añaden que en el 2002, la “Junta de Directores cambió el color del plafón y de los pasamanos y barandas de los balcones sin contar con el voto unánime del Consejo de Titulares”. íd. Por ello, concluyen que “[n]o es posible invalidar un hecho aprobado anteriormente por unanimidad por uno aprobado por mayoría posteriormente”. Id.
Su argumentación no nos convence. Los peticionarios no acompañan prueba de sus argumentos. En ausencia de esa prueba, no podemos variar las determinaciones de hechos del D.A.Co. Recordemos que las impugnaciones de las de-terminaciones de hechos de las agencias administrativas no pueden estar sustentadas en el vacío. Para probar que las determinaciones de hechos no se sostienen en el expe-diente, se debe demostrar que existe otra prueba en el ex-pediente que reduce o menoscaba el peso de la evidencia impugnada. Pereira Suárez v. Jta. Dir. Cond., supra.
Por todo lo anterior, concluimos que incidió el Tribunal de Apelaciones al revocar la resolución de D.A.Co. que des-estimó la querella de los esposos Nobbe-Batista sobre este asunto. Ante ese cuadro fáctico, concluimos que debe sos-tenerse la determinación del foro administrativo con rela-ción al asunto de fachada.
Resuelta la primera controversia, veamos entonces si los esposos Nobbe-Batista podían colocar en el marco del ascensor que da entrada al vestíbulo de su apartamento un portón de rejas con llave que solo ellos pueden abrir.
*222 IV
Recientemente expresamos en S.L.G. SzendreyRamos v. Consejo de Titulares, 184 D.RR. 133 (2011), que
a escritura matriz constituye “la fuente vinculante para los condominos, luego de la Ley”. M.J. Godreau, El condominio: El régimen de propiedad horizontal en Puerto Rico, Ira ed., Río Piedras, Puerto Rico, Ed. Dictum, 1992, pág. 71.
Añadimos, en ese caso, que la escritura matriz es
... un estatuto privado —al cual se adhieren los titulares cuando compran sus respectivos apartamentos— que gobierna a los condominos o titulares y a cuyas disposiciones debemos acudir para dirimir cualquier conflicto, a menos que tales dis-posiciones violen la ley, la moral o el orden público. Consejo Tit. Cond. McKinley Court v. Rullán, 126 D.P.R. 387, 394 (1990) (Sentencia). Véase, además, Consejo de Titulares v. Vargas, 101 D.P.R. 579, 582 (1973); Soto Vázquez v. Vázquez Torres, 138 D.P.R. 282 (1995).
El Art. 12 de la Ley de Condominios, supra, define los elementos comunes limitados de un inmueble como “aquellos que se destinen al servicio de cierto número de apartamientos con exclusión de los demás, tales como pasillos, escaleras y ascensores especiales, servicios sanitarios comunes a los apartamientos de un mismo piso y otros análogos”. En palabras del profesor Godreau, el elemento común limitado
... es aquel que se destina para el uso exclusivo de un nú-mero limitado de apartamientos. Así, por ejemplo, el pasillo de un piso puede designarse como elemento común limitado al uso de los apartamientos de ese piso; la azotea puede ser para el uso de los apartamientos del último piso, o un patio podrían compartirlo dos o tres apartamientos terreros. (Enfasis nuestro). M. Godreau, La nueva Ley de Condominios, 2da ed., San Juan, Ed. Dictum, 2003, pág. 57.
La práctica notarial exige que las escrituras matrices de los condominios sometidos al régimen de propie- *223 dad horizontal contengan enumerados los elementos comu-nes limitados del inmueble. Ahora bien, como explica el profesor Godreau, la clasificación de un área como ele-mento común limitado en la escritura matriz no siempre es correcta. Sobre ese particular el profesor Godreau añade y distingue, refiriéndose a los elementos comunes limitados, que
[l]o que sí queda aclarado es que tiene que tratarse de un área compartida entre más de un apartamiento. Con ello debe aclararse la confusión que se refleja en muchas escrituras en las que, por ejemplo, el espacio de estacionamiento que se le adscribe a un apartamiento o el área de patio trasero para el uso exclusivo de tal o cual apartamiento o la azotea reservada para el “penthouse”, se catalogan erróneamente como elemen-tos comunes limitados para el disfrute exclusivo de ese apartamiento. Si un área es para el disfrute exclusivo de un apartamiento, no puede ser común, sino privativa y el área superficial que le corresponda al mal llamado “elemento co-mún” debe computarse como parte integrante del apartamiento. La nueva Ley aclara, además, que el manteni-miento de los elementos comunes limitados le corresponde únicamente a los apartamientos que disfrutan de ellos. (Énfa-sis nuestro). Id., pág. 57.
Este análisis demuestra que, aunque en la escritura matriz de un condominio se denomine un área como ele-mento común limitado, si responde al servicio de un solo apartamento realmente es un área privativa. En concor-dancia, lo que exponemos no es otra cosa que lo que en múltiples ocasiones hemos indicado: “el nombre no hace la cosa”. Borschow Hosp. v. Jta. de Planificación, supra, pág. 567.
Un estudio de la escritura matriz del condominio Con-dado Terrace revela que entre los elementos comunes del inmueble se incluyó el vestíbulo que da entrada al elevador y a las escaleras desde o hacia los apartamentos de cada piso. Sobre el particular, la escritura matriz dispone:
*224 COMMON AREAS AND FACILITIES
-----(e) The following facilities located in each one of the six (6) upper floors are RESTRICTED COMMON AREAS AND FACILITIES restricted to the apartment units of each respective floor:----------------------------------------------------------------------------------------(1) A lobby providing access to the elevator and to the stairway from or to the apartment units on the respective floor. Apéndice del Certiorari, págs. 359-361.
Aunque esa denominación es correcta para los pisos en los que ubique más de un apartamento, ese no es el caso del apartamento de los esposos Nobbe-Batista. Surge de la escritura matriz y de las determinaciones de hechos del D.A.Co. que el quinto piso del condominio Condado Terrace cuenta con un solo apartamento.([1]) Al ser así, el área del vestíbulo que da entrada al apartamento de los esposos Nobbe-Batista no puede ser incluida como un área común limitada. Este es el claro ejemplo de lo que explica el pro-fesor Godreau con relación a los mal llamados elementos comunes limitados en las escrituras matrices.
Por otro lado, la Junta de Directores alega que el matri-monio Nobbe-Batista utiliza para su beneficio los compo-nentes eléctricos de un área común limitada. Sin embargo, la Junta de Directores no nos coloca en posición de poder dilucidar tal aseveración. En su recurso de certiorari ante este Tribunal, solo alega en cuanto a los componentes eléc-tricos que “[e]xiste además, la apropiación de este ele-mento común limitado para uso privado, el hecho de utili-zar energía eléctrica para uso privado cuando es un sistema común que pagan todos lo titulares por parte de la Recurrida”. Certiorari, pág. 16. Como vemos, nunca espe- *225 cifican a qué componentes eléctricos se refieren y en qué medida los otros titulares aportan a su mantenimiento. Ante la ausencia de alegaciones específicas, no podemos dilucidar la veracidad de esa alegación.
En conclusión, como el vestíbulo del quinto piso es para el disfrute exclusivo del apartamento número cinco, no puede ser común sino privativo. Según explica el profesor Godreau, op. cit., pág. 57, esa “área superficial que le co-rresponda al mal llamado ‘elemento común’ debe compu-tarse como parte integrante del apartamiento”. Sin embargo, no está ante nuestra consideración cómo la denominación incorrecta de esa área afecta el porcentaje de participación en los elementos comunes. Por ello, no po-demos resolver ese asunto.
Así pues, el matrimonio Nobbe-Batista podía colocar el portón de reja en el marco del elevador que da entrada a su apartamento. Por este fundamento, el Tribunal de Apela-ciones hizo lo correcto al dejar sin efecto la orden del D.A.Co. de devolver el vestíbulo del apartamento a su es-tado antes de la colocación del portón de rejas. No estamos enmendando la escritura matriz del condominio. Mera-mente reconocimos que el error en la denominación de un área privativa no autoriza a que se ordene a sus titulares abrirla para el acceso común limitado de los demás condominos. Esto no afecta la clasificación de las escaleras como elemento común. Apéndice del Certiorari, pág. 90.
V
Por los fundamentos expuestos, se dictará sentencia para modificar la del Tribunal de Apelaciones y confirmar la orden del D.A. Co. de devolver el techo y las barandas del balcón del quinto piso al color seleccionado por el Consejo de Titulares. Además, concluimos que el área del vestíbulo del quinto piso que da entrada al apartamento del matri-monio Nobbe-Batista es privativa. Por consiguiente, se deja en vigor el dictamen del Tribunal de Apelaciones que revocó *226 al D.A.Co. en cuanto a este punto. Así modificada, se confirma la sentencia del Tribunal de Apelaciones.

Se dictará Sentencia de conformidad.

El Juez Asociado Señor Estrella Martínez emitió una opinión de conformidad y disidente.
— O —

(1) “Los pisos 1, 2 y 6 contienen dos apartamentos por piso. Los pisos 3, 4 y 5 contienen un apartamento por piso”. Apéndice del recurso certiorari, pág. 305. Asi-mismo, dispone la escritura matriz:
“RESIDENTIAL APARTMENT UNITS AND PRIVATE AREAS “The residential apartments are located and numbered as follows:
“Fifth Floor Level-Apartment Number Five (5)— type — Four (4) bedrooms apartment. ...’’Apéndice del Certiorari, págs. 349-350.